UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARYN BRADLEY-ABOYADE, an individual and successor-in-interest of Wayne Benjamin Bradley, deceased,<br><br>Plaintiff,<br><br>v.<br><br>OFFICER D. CROZIER, et al.,<br><br>Defendant. | No. 2:19-cv-01098-TLN-AC<br><br>**ORDER** |

This matter is before the Court on Defendants J. Austin, D. Crozier, C. Larsen. R. Salas, and T. Heng's Motion to Dismiss Plaintiff's First Amended Complaint ("FAC"). (ECF No. 19.) Defendants D. Hatch, T. Collins, G. Schopf, M. Gallegos, J. Lizarraga, and R. Gonzalez (collectively, "Defendants") joined the Motion to Dismiss the FAC. (ECF No. 29.) Plaintiff Taryn Bradley-Aboyade ("Plaintiff") opposed the Motion. (ECF No. 20.) Defendants replied. (ECF No. 22.) For the reasons set forth below, the Court GRANTS Defendants' Motion to Dismiss.

///

///

///

1

### I.   FACTUAL AND PROCEDURAL BACKGROUND

This action involves the death of Wayne Benjamin Bradley ("Decedent") while he was in custody at Mule Creek State Prison ("MCSP"). (ECF No. 15 at 2.) Plaintiff, Decedent's biological daughter, filed a lawsuit against Officers D. Crozier, R. Salas, G. Schopf, D. Hatch, T. Heng, M. Gallegos, T. Collins, C. Larsen, and Sergeant R. Gonzalez (collectively, "Officer Defendants"), MCSP Warden Joe Lizarraga ("Lizarraga"), and MCSP Public Records Act Coordinator J. Austin. (*Id.* at 1–2.) Plaintiff alleges Officer Defendants were employed as prison guards and directly responsible for the safety and wellbeing of all inmates at MCSP, including Decedent. (*Id.* at 2–3.) Plaintiff additionally claims Defendant Joe Lizarraga ("Lizarraga") was the MCSP Warden and Defendant J. Austin ("Austin") was employed as the Public Records Act Coordinator at MCSP. (*Id.* at 3.) All Defendants are sued in their individual capacity. (*Id.*)

Prior to Decedent's death, Plaintiff asserts she maintained a highly personal relationship with her father through frequent telephone conversations, in-person interactions, and written communications. (*Id.* at 4.) While Decedent was living, he allegedly assumed responsibilities for Plaintiff's upbringing and maintained consistent contact with Plaintiff throughout her childhood and adulthood. (*Id.*)

On November 18, 2017, Decedent was murdered by his cellmate, Everett McCoy ("McCoy"). (*Id.*) Prior to Decedent's death, Plaintiff alleges McCoy acted increasingly impulsive and unpredictable towards Decedent, threatening his safety. (*Id.* at 4–5.) Plaintiff further asserts Decedent reported McCoy's actions to prison staff and requested a new cellmate but was ignored. (*Id.* at 5.) Plaintiff claims Officer Defendants and Lizarraga knew and were aware that Decedent and McCoy were having compatibility issues that would lead to violence and great bodily injury. (*Id.* at 4.)

Prior to Decedent's death, Lizarraga, Officers D. Crozier, R. Salas, G. Schopf, D. Hatch, T. Heng, M. Gallegos, and T. Collins were on duty and allegedly allowed McCoy to go out to the recreation yard and bring the rock he subsequently used to murder Decedent back to his cell. (*Id.* at 6.)

///

C. Larsen and R. Gonzalez were on duty in Decedent's cell block and in charge of monitoring and supervising the area where Decedent was killed. (*Id.* at 5.) C. Larsen found Decedent bloodied and unresponsive in his cell. (*Id.*)

On April 17, 2019, Plaintiff submitted a California Public Records Act ("CPRA") request to MCSP officials seeking information related to Decedent's murder. Austin partially denied Plaintiff's request stating "[w]ith a criminal case pending, the materials requested are exempt from disclosure under [California Government Code §] 6254(f)." (*Id.* at 8.) On June 14, 2019, Plaintiff initiated the instant action. (ECF No. 1.)

Defendants moved to dismiss the Complaint (ECF No. 14). Instead of opposing, Plaintiff filed a FAC as a matter of right pursuant to Federal Rule of Civil Procedure 15. (ECF No. 15.) In the FAC, Plaintiff alleges violations of federal constitutional rights under 42 U.S.C. § 1983 and a state law claim under the CPRA. The federal claims are pleaded against Officer Defendants and Lizarraga and the state law claim is pleaded against Austin. Defendants then filed the instant Motion to Dismiss. (ECF No. 19.)

## II.  STANDARD OF LAW

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009). Under notice pleading in federal court, the complaint must "give the defendant fair notice of what the claim ... is and the grounds upon which it rests." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

On a motion to dismiss, the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

relief." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. 544, 556 (2007)).

Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of factual allegations." *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986). While Rule 8(a) does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. A pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Moreover, it is inappropriate to assume the plaintiff "can prove facts that it has not alleged or that the defendants have violated the...laws in ways that have not been alleged[.]" *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 697 (quoting *Twombly*, 550 U.S. at 570). Only where a plaintiff fails to "nudge[ ] [his or her] claims...across the line from conceivable to plausible[,]" is the complaint properly dismissed. *Id.* at 680. While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678. This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of United States, Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

///

4

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Marino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile). Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

### III. ANALYSIS

#### A. Claim One: Failure to Protect a Prisoner (42 U.S.C. § 1983)

Defendants move to dismiss Plaintiff's First Cause of Action on the basis that Plaintiff is not the successor-in-interest to Decedent's Eighth Amendment claim and therefore does not have sufficient standing to bring the claim on behalf of Decedent under 42 U.S.C. § 1983 ("§ 1983"). (ECF No. 19 at 5.) The federally protected rights enforceable under § 1983 are personal to the injured party. *Rose v. City of Los Angeles*, 814 F. Supp. 878, 881 (C.D. Cal. 1993). However, under 42 U.S.C. § 1988, a § 1983 claim, which arose before death survives the decedent when state law authorizes a survival action. 42 U.S.C. § 1988; *see Robertson v. Wegmann*, 436 U.S. 584, 589–90 (1978); *Tatum v. City & Cnty. of S.F.*, 441 F.3d 1090, 1093 n.2 (9th Cir. 2006). Under the California Code of Civil Procedure, a survival action may be brought either by the decedent's personal representative or, if there is no representative, by the decedent's successor-in-interest. Cal. Civ. Proc. Code § 377.30. Here, Plaintiff alleges she has the superior right to bring the lawsuit "as an individual and as a successor-in-interest." (ECF No. 15 at 2.)

Defendants argue Plaintiff does not have a superior right to bring this claim on behalf of Decedent because pursuant to California law, Decedent's spouse, rather than Plaintiff, is the successor-in-interest to Decedent's § 1983 claim. (ECF No. 19 at 6.) In opposition, Plaintiff argues there is no proof Decedent was married at the time of his death and regardless, as

Decedent's biological daughter, Plaintiff has the legal right to half of Decedent's separate property, giving her standing for a survivorship claim. (ECF No. 20 at 10.) In reply, Defendants point to Plaintiff's declaration attached to the FAC that lists Natasha Bradley as "the wife of Decedent." (ECF No. 22 at 3.) This Court agrees with Defendants and finds the facts alleged in the FAC do not leave this matter reasonably open to dispute.[1]

Defendants additionally argue in their reply that Plaintiff's legal right to Decedent's separate property is irrelevant to this case, because separate property does not include Decedent's § 1983 action. (ECF No. 22 at 4.) Defendants' assertion is correct. In California, a successor-in-interest only has the authority to act with respect to the particular causes of action to which she succeeds. Cal. Civ. Proc. Code § 377.30; *see Exarhos v. Exarhos*, 159 Cal. App. 4th 898, 908–09 (2008). As Decedent's daughter, Plaintiff is a successor-in-interest to Decedent's separate property. Cal. Prob. Code § 6401(2). However, Defendants argue — and Plaintiff does not refute — the instant personal injury action is community property. (ECF No. 22 at 3.) And, under California Probate Code § 6401, Decedent's surviving spouse, rather than Plaintiff, is the sole beneficiary of Decedent's community property. *See* Cal. Prob. Code § 6401.

Therefore, because Plaintiff may only bring a claim with respect to the action she succeeds and she is not a successor-in-interest to Decedent's community property, Plaintiff does not have standing to bring this § 1983 cause of action on behalf of Decedent. Moreover, amendment of this claim is futile. *Lopez*, 203 F.3d at 1130. Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to the First Cause of Action without leave to amend.

      B.   <u>Claim Two: Interference with Parent/Child Relationship</u>

Defendants next move to dismiss Plaintiff's Second Cause of Action brought under the Fourteenth Amendment's Due Process Clause for Interference with a Parent-Child Relationship. (ECF No. 19 at 9.) Defendants argue: (1) Plaintiff fails to allege she and her father "had the type of close and enduring relationship that is protected by the Fourteenth Amendment;" and (2) Plaintiff's Fourteenth Amendment claim fails because it requires an underlying constitutional

---

[1] The Court also takes judicial notice of Decedent's death certificate filed with Amador County that lists Natasha Bradley as Decedent's surviving spouse. (ECF No. 15 at 17.)

1    violation and she has not successfully alleged an Eighth Amendment violation.  (*Id.*)  The Court
2    will address each of these arguments in turn.

                    i.        *Protected Familial Relationship*

4           Defendants argue Plaintiff's Second Cause of Action should be dismissed for failure to
5    allege that she and Decedent had the type of close and enduring relationship protected by the
6    Fourteenth Amendment Due Process Clause.  (ECF No. 19 at 9.)  Plaintiff opposes, arguing a
7    biological relationship is "minimally sufficient" for a due process claim.  (ECF No. 20 at 4.)
8    Plaintiff's assertion goes against both Supreme Court and Ninth Circuit precedent.
9           While the Ninth Circuit has recognized that the Fourteenth Amendment protects a child's
10   liberty interest in the "companionship and society" of her father, *see Hayes v. Cty. of San Diego*,
11   736 F.3d 1223, 1229–30 (9th Cir. 2013), the Ninth Circuit has also explicitly stated "the mere
12   existence of a biological link does not merit equivalent constitutional bonds."  *Wheeler v. City of*
13   *Santa Clara*, 894 F.3d 1046, 1058 (9th Cir. 2018) (*quoting Lehr v. Robertson*, 463 U.S. 248, 262
14   (1983)).  Instead, "[j]udicially enforceable Fourteenth Amendment interests require enduring
15   relationships reflecting an assumption of parental responsibility."  *Wheeler*, 894 F.3d at 1058
16   (noting the plaintiff in *Wheeler* did not allege his mother "raised him, otherwise resumed
17   responsibility for his upbringing, or even maintained consistent contact with him during his
18   childhood").  Therefore, Plaintiff's first argument that her biological relationship is sufficient to
19   bring this claim is unavailing.
20          However, Plaintiff further argues because "Plaintiff and Decedent's relationship was
21   constant throughout both of their lives," she has pleaded sufficient facts to assert a claim for
22   interference with the parent/child relationship.  (ECF No. 20 at 4.)  In *Lehr v. Robertson*, the
23   Supreme Court found that a father who "grasps the opportunity to develop a relationship with his
24   offspring … and accepts some measure of responsibility for the child's future . . . may enjoy the
25   blessings of the parent-child relationship."  463 U.S. 248, 262 (1983).  Here, Plaintiff alleges
26   "[w]hile Decedent was living, he assumed responsibilities for Plaintiff's upbringing and
27   maintained consistent contact with Plaintiff both during childhood and adulthood of Plaintiff."
28   (ECF No. 15 at 4.)  Therefore, while a biological relationship is not "minimally sufficient" to

establish the requisite relationship, Plaintiff has stated sufficient facts at the pleading stage to demonstrate her relationship with Decedent was plausibly protected under the Fourteenth Amendment Due Process Clause.

> ii. *Eighth Amendment Violation*

In evaluating a claim for interference with familial relations, the alleged violations of Decedent's rights provide the basis for the substantive due process claim. *Cooper v. Brown*, No. 115CV00648LJOSAB, 2019 WL 4138682, at *6 (E.D. Cal. Aug. 30, 2019). Having dismissed Plaintiff's First Cause of Action due to lack of standing, in order to rule on the Second Cause of Action, the Court must determine whether Plaintiff sufficiently alleges an underlying violation of Decedent's Eighth Amendment rights. Plaintiff asserts Officer Defendants and Lizarraga knew McCoy posed a "substantial risk of harm" to Decedent and "were deliberately indifferent to that risk." (ECF No. 15 at 9.) In their Motion to Dismiss, Defendants argue Plaintiff "does not plausibly allege that each Defendant was actually aware that Mr. Bradley was in 'substantial danger.'" (ECF No. 19 at 8.) In opposition, Plaintiff argues she need only "allege that a defendant was 'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [that the defendant] must also have drawn and disregarded that inference." (ECF No. 20. at 7.) In response, Defendants claim Plaintiff's allegations are "predicated on acts of negligence" and consequently do not support her deliberate indifference claim. (ECF No. 22 at 4.)

Prison officials have a duty to protect prisoners from violence at the hands of other inmates. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). The failure to protect an inmate may rise to the level of an Eighth Amendment violation when: (1) the deprivation alleged is objectively, sufficiently serious; and (2) the prison official is deliberately indifferent to the inmate's health or safety. *Id.* at 834. "Deliberate indifference describes a state of mind more blameworthy than negligence" but is fulfilled by something "less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Id.* at 835.

///

///

*a) Sufficiently Serious*

Under a failure to protect claim, the sufficiently serious deprivation prong may be satisfied by allegations showing Decedent was incarcerated under conditions posing a substantial risk of serious harm. *See Lemire v. California Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1075 (9th Cir. 2013.) Here, Plaintiff alleges "[a]fter Decedent and Mr. McCoy were assigned to the same cell . . . Mr. McCoy acted increasingly impulsive and unpredictable towards Decedent, and threatened Decedent's safety." (ECF No. 15 at 5.) This led to Decedent's alleged reports of "Mr. McCoy's threatening and hostile behavior to prison staff" and request for "a new cell mate." (*Id.*) Plaintiff further alleges McCoy brought a rock over six inches in diameter from the recreation yard into his shared cell with Decedent, which he used to murder Decedent. (*Id.* at 6.) These allegations sufficiently establish Decedent was incarcerated under conditions posing a substantial risk of serious harm.

*b) Deliberate Indifference*

The closer question is whether Plaintiff established the subjective element of a deliberate indifference claim. Defendants argue "[a]ssuming, without conceding that Mr. McCoy posed a substantial risk of harm to Mr. Bradley, Plaintiff nevertheless fails to allege facts supporting the subjective deliberate indifference prong," because the "FAC does not plausibly allege that each Defendant was actually aware that Mr. Bradley was in 'substantial danger.'" (ECF No. 19 at 7–8.) Plaintiff opposes, arguing "a prison official may be held liable under the Eighth Amendment if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." (ECF No. 20 at 7 (citing *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016)).)

This subjective inquiry involves two components. First, Plaintiff must "demonstrate that the risk was obvious or provide other circumstantial or direct evidence that the prison officials were aware of the substantial risk" to Decedent's safety. *Lemire*, 726 F.3d at 1078. Second, Plaintiff must show there was no reasonable justification for exposing Decedent to the risk. *See id.*; *Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010). Plaintiff attempts to establish this subjective inquiry based on three different factual circumstances.

First, Plaintiff alleges Officer Defendants and Lizarraga "knew and were aware that Decedent and Everett McCoy were having compatibility issues in their shared cell which would lead to violence and great bodily injury." (ECF No. 15 at 4.) More specifically, Plaintiff alleges Decedent's repeated reports about his cellmate's "threatening and hostile behavior" and his request for a new cellmate were ignored. (*Id.* at 5.) Significantly, Plaintiff does not explicitly state Officer Defendants and Lizarraga ignored Decedent, instead Plaintiff's alleges "Mule Creek prison officers, guards, agents, and employees repeatedly ignored Decedent's request for a transfer." (ECF No. 15 at 5.) Plaintiff additionally alleges McCoy "has a known history of violence towards fellow inmates, correctional officers, and other prison staff" and specifically asserts Officer Defendants and Lizarraga "knew of Mr. McCoy's . . . gruesome and violent history." (ECF No. 15 at 4.) However, Defendants argue without more, Plaintiff "fails to allege any facts showing Defendants had specific knowledge of Mr. Bradley's alleged complaints about Mr. McCoy." (ECF No. 19 at 8.)

The Court agrees with Defendants. "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004). "Under this standard, the prison official must not only 'be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* at 1057 (quoting *Farmer*, 511 U.S. at 837). Here, any inference that Officer Defendants and Lizarraga were exposed to information about McCoy's violent history would be drawn from conclusions rather than factual allegations, which is insufficient. *See Twombly*, 550 U.S. at 555 (noting a "pleading is insufficient if it offers mere 'labels and conclusions'"). Plaintiff provides no factual allegations detailing how each Officer Defendant and Lizarraga knew of McCoy's violent history or how they knew about Decedent's complaints. Finally, Plaintiff fails to show how the risk of housing McCoy with Decedent was obvious. Therefore, deliberate indifference cannot be established against Officer Defendants and Lizarraga on these allegations.

Second, Plaintiff alleges Lizarraga and Officers D. Crozier, R. Salas, G. Schopf, D. Hatch, T. Heng, M. Gallegos and T. Collins were deliberately indifferent to Decedent's safety as they "had a duty to prevent Mr. McCoy from having any weapons that would cause great bodily injury

or death to others," but "allowed Mr. McCoy to bring the rock into the shared cell." (ECF No. 15 at 6.) However, "deliberate indifference describes a state of mind more blameworthy than negligence." *See Farmer*, 511 U.S. at 835. Neither negligence nor gross negligence constitutes deliberate indifference. *Id.* at 835–836. Instead, Eighth Amendment liability rests on Defendants' actual awareness of the risk. *Taylor v. Barkes*, 575 U.S. 822 (2015). In order to state a plausible claim for relief, Plaintiff's complaint must include enough "factual content that allows the court to draw the reasonable inference," *Iqbal*, 555 U.S. at 678, that Lizarraga and Officers D. Crozier, R. Salas, G. Schopf, D. Hatch, T. Heng, M. Gallegos and T. Collins were aware McCoy had taken the rock back to his cell, and then failed to take reasonable action. *See, e.g., Sisneros v. Krittman*, No. 14CV891 GPC (RBB), 2016 WL 11447608, at *3 (S.D. Cal. Feb. 9, 2016), *report and recommendation adopted*, No. 314CV00891GPCRBB, 2016 WL 3517600 (S.D. Cal. June 28, 2016). Without such allegations, Plaintiff fails to assert a deliberate indifference claim against Lizarraga and Officers D. Crozier, R. Salas, G. Schopf, D. Hatch, T. Heng, M. Gallegos and T. Collins.

Finally, Plaintiff claims Officers C. Larsen and R. Gonzalez failed to conduct adequate safety inspections in the cell block where Decedent was killed. (ECF No. 15 at 5.) Plaintiff further alleges C. Larsen and R. Gonzalez "knew that Decedent would be attacked" and they "had the means and opportunity to prevent the attack from occurring or continuing, but deliberately failed to do so and were deliberately and wantonly indifferent to the Decedent's safety." (*Id.*) However, the FAC is once again devoid of any factual allegations that support these contentions. Instead, Plaintiff provides bare legal conclusions, which are insufficient to state a claim. *Twombly*, 550 U.S. at 555. Not only are there no facts to indicate C. Larsen and R. Gonzalez were aware of the risk, but there are also no facts to indicate the risk was obvious. For example, nothing in the FAC indicates any noise or commotion occurred that may have alerted C. Larsen or R. Gonzalez to the struggle. Therefore, this Court finds Plaintiff fails to allege sufficient facts showing C. Larsen and R. Gonzalez were deliberately indifferent.

///

///

11

Having failed to allege sufficient facts to demonstrate the risk was obvious or that Officer Defendants and Lizarraga were aware of the substantial risk to Decedent's safety, Plaintiff fails to establish an underlying constitutional violation. As Plaintiff's Fourteenth Amendment claim is predicated upon an Eighth Amendment violation, failing to allege Officer Defendants and Lizarraga violated the Eighth Amendment precludes Plaintiff from seeking recovery for an interference with a familial relationship claim. *See Cooper v. Brown*, No. 115CV00648LJOSAB, 2019 WL 4138682, at *6 (E.D. Cal. Aug. 30, 2019). Because the defects described above could be cured by amendment, such dismissal is with leave to amend. *Lopez*, 203 F.3d at 1130. Accordingly, the Court GRANTS Defendants' Motion to Dismiss as to Claim Two with leave to amend.

          C.        <u>Claim Three: Violation of California's Public Records Act</u>

Plaintiff alleges Austin's failure to make requested documents available for inspection violates her rights under the CPRA. Plaintiff seeks reasonable costs of this suit, attorney's fees, equitable relief, and any further relief this Court may deem appropriate under the CPRA. (ECF No. 15 at 13.) Defendants argue this claim should be dismissed because: (1) the Eleventh Amendment prohibits the Court from enforcing California law against the State of California or its officials; and (2) Plaintiff erroneously names Austin in his individual rather than official capacity. (ECF No. 19 at 11.) The Court will address Defendants' arguments in turn.

                        *i.*        *Eleventh Amendment*

In opposition to Defendants' Motion to Dismiss, Plaintiff argues while the Eleventh Amendment bars suits brought by private citizens against state governments without consent, "there is a clear difference between a suit against state governments and its officers sued in their official capacity and a suit against state officers in their individual capacity." (ECF No. 20 at 11.)

///
///
///
///
///

In *Pennhurst State School & Hospital v. Halderman (Pennhurst)*, 465 U.S. 89 (1984), the Supreme Court held the Eleventh Amendment "bars suits in federal court, for both retrospective and prospective relief, brought against state officials acting in their official capacities alleging a violation of state law." However, the Supreme Court "distinguished the situation where a plaintiff brings suit against a state official acting in his individual capacity." *Pena v. Gardner*, 976 F.2d 469, 474 (9th Cir. 1992), *as amended* (Oct. 9, 1992).

In light of this distinction, the Ninth Circuit interpreted *Pennhurst* to mean "the eleventh amendment does not bar a suit seeking damages against a state official personally." *Id.* at 473; *see also Papasan v. Allain*, 478 U.S. 265, 278 n.11 (1986) (noting "[w]hen a state official is sued and held liable in his individual capacity, however, even damages may be awarded."). However, the CPRA does not provide damages as a form of relief. Cal. Gov. Code § 6258; *see Hammerlord v. Filner*, No. 11-CV-01564 JLS NLS, 2013 WL 4046676, at *6 (S.D. Cal. Aug. 9, 2013). Therefore, to the extent she seeks to recover damages under the CPRA, Plaintiff's claim fails.

Defendants argue injunctive relief is also prohibited against state officials sued in their individual capacity under § 1983. (ECF No. 19 at 11.) However, Plaintiff has not brought a § 1983 claim against Austin. Instead, Plaintiff seeks relief under the CPRA, which specifically allows any person to "institute proceedings for injunctive or declarative relief." Cal. Gov't Code § 6258. Therefore, the question remains whether Plaintiff can seek injunctive relief in a federal action against state officials sued in their individual capacity under state law.

      *ii.*  *Individual or Official Capacity*

In *Pennhurst*, the Supreme Court found that while prospective injunctions preventing violation of federal law were not barred by the Eleventh Amendment, similar injunctions seeking compliance with state law were barred when the state was "a real, substantial party in interest." *Pennhurst*, 465 U.S. at 101; *see also Stephens v. Am. Home Assurance Co.*, 811 F. Supp. 937, 961 (S.D.N.Y. 1993). A state is "a real, substantial party in interest" when the judgement sought would require the state to pay monies or be compelled to act or restrained from acting. *Pennhurst*, 465 U.S. at 101–02 n.11.

Plaintiff attempts to circumvent the rule stated in *Pennhurst* by seeking equitable relief against Austin in his individual capacity. However, as the Supreme Court has ruled, "[t]he real interests served by the Eleventh Amendment are not to be sacrificed to elementary mechanics of captions and pleading." *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 270 (1997). Similarly, in his concurring opinion to *Pena v. Gardner*, Judge Nelson argued simply glancing at the caption of the case is not "all that is required." 976 F.2d 469, 474 (9th Cir. 1992), *as amended* (Oct. 9, 1992) (Nelson, T.G., concurring). Instead, "courts must still analyze the specifics of the conduct involved when determining whether a suit is against an official in his or her 'official' or 'individual' capacity." *Id.*

According to Judge Nelson, "[a]n official is being sued in his individual capacity if his action was beyond the scope of his designated power." *Id.* Here, Plaintiff argues Austin acted outside his official duties by "refusing to produce responsive documents to Plaintiff's CPRA request when the law required him to provide such documents." (ECF No. 20 at 11.) However, a state official who makes an error is not necessarily acting outside the scope of his designated power. In *Pennhurst*, the Supreme Court noted the critical factor was "whether the defendant state official was empowered to do what he did, i.e., whether, even if he acted erroneously, it was action within the scope of his authority." *Pennhurst*, 465 U.S. at 112 n.22.

Here, as the Public Records Act Coordinator at MCSP, Plaintiff asserts Austin "was employed as the Public Records Act Coordinator at Mule Creek State Prison" (ECF No. 6) and had "a legal obligation to make all public records available for inspection by any member of the public upon request" (ECF No. 51). Under the CPRA, Austin, as Public Records Act Coordinator, did not have to disclose the requested information if the "disclosure would endanger the successful completion of the investigation or a related investigation." Cal. Gov't Code § 6254(f). Therefore, even if there was no criminal case pending, as Plaintiff alleges, and Austin erroneously withheld the requested documents, refusing the documents on the basis of an ongoing investigation was within the scope of his designated authority.

///

///

Based on the above and the facts alleged in the Complaint, the Court finds Austin was acting within his official rather than individual capacity. The Eleventh Amendment therefore applies and bars Plaintiff's claim.[2] Accordingly, this Court GRANTS Defendants' Motion to Dismiss as to Claim Three. Because this deficiency cannot be cured through the amendment of additional facts, dismissal is without leave to amend. *Lopez*, 203 F.3d at 1130.

## IV. CONCLUSION

Based on the foregoing, the Court ORDERS as follows:

1. Defendants' Motion to Dismiss as to Claim One is GRANTED without leave to amend;

2. Defendants' Motion to Dismiss as to Claim Two is GRANTED with leave to amend; and

3. Defendants' Motion to Dismiss as to Claim Three is GRANTED without leave to amend.

Plaintiff may file an amended complaint not later than 30 days from the electronic filing of this Order. Defendants' responsive pleading is due 21 days after Plaintiff files the amended complaint.

IT IS SO ORDERED.

DATED: August 3, 2020

Troy L. Nunley
United States District Judge

---

[2] The Court declines to address whether Plaintiff may still seek injunctive relief against Austin in a state court action as that issue is not before this Court and is inapplicable to the instant action.