UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TARYN BRADLEY-ABOYADE, | No. 2:19-cv-01098-TLN-AC |
| Plaintiff, | |
| v. | **ORDER** |
| OFFICER D. CROZIER, et al., | |
| Defendants. | |

This matter is before the Court on Defendants D. Crozier ("Crozier"), D. Hatch ("Hatch"), R. Salas ("Salas"), G. Schopf ("Schopf"), T. Collins ("Collins"), M. Gallegos ("Gallegos"), T. Heng ("Heng"), C. Larsen ("Larsen"), and R. Gonzalez's ("Gonzalez") (collectively, "Defendants") Motion to Dismiss and Motion to Strike.  (ECF No. 36.)  Plaintiff Taryn Bradley-Aboyade ("Plaintiff") opposed the motion (ECF No. 39) and Defendants replied (ECF No. 40).  For reasons set forth below, Defendants' Motion to Dismiss and Motion to Strike (ECF No. 36) is GRANTED in part and DENIED in part.

///

///

///

///

///

1

1        **I.        FACTUAL AND PROCEDURAL BACKGROUND**

2            This action arises from the death of Wayne Benjamin Bradley ("Decedent") while he was

3    in custody at Mule Creek State Prison ("MCSP").  (ECF No. 32 at 2.)  Plaintiff, Decedent's

4    surviving daughter, brings this action against Officers Crozier, Hatch, Salas, Schopf, Collins,

5    Gallegos, Heng, Larsen, and Sergeant Gonzalez under 28 U.S.C. § 1983 on grounds of

6    interference with familial relationships under the Fourteenth Amendment.  (*Id.* at 11.)  Plaintiff

7    alleges Defendants were employed as prison guards at MCSP and were directly responsible for

8    the safety and wellbeing of all inmates at MCSP, including Decedent.  (*Id.* at 2–3.)  All

9    Defendants are sued in their individual capacity.  (*Id.* at 2.)

10           On November 18, 2017, Decedent was killed by his cellmate, Everett McCoy ("McCoy").

11   (*Id.* at 3.)  McCoy is a 35-year-old violent criminal with a history of committing violent attacks,

12   both before and after his incarceration.  (*Id.* at 4.)  He is serving a 28-years to life sentence for a

13   first-degree murder and second-degree robbery conviction.  (*Id.*)  Plaintiff alleges McCoy

14   threatened and battered correctional officers and other fellow inmates on numerous occasions.

15   (*Id*.)  Plaintiff alleges Defendants were aware of these prior acts of violence but does not allege

16   facts showing each Defendant was aware of any violent incident.  (*See id.*)

17           Prior to Decedent's death, Plaintiff alleges McCoy acted increasingly impulsive and

18   unpredictable towards Decedent, threatening his safety.  (*Id.* at 4.)  Several weeks prior to

19   Decedent's death, Decedent purportedly notified Defendants — each of whom worked shifts

20   during that time in Decedent's housing building — that McCoy had threatened him with violence.

21   (*Id.* at 4–5.)  However, each Defendant ignored the reported threats and repeatedly told Decedent

22   not to engage in fighting with McCoy or else he would lose his visitation privileges.  (*Id.* at 5.)

23   Plaintiff alleges Defendants and various other MCSP staff refused to schedule an "immediate bed

24   move" and instead collectively scheduled a cell transfer for Decedent to occur on November 11,

25   2017.  (*Id.*)  This cell transfer was later rescheduled to November 18, 2017, for no apparent

26   reason.  (*Id.*)  Plaintiff alleges McCoy obtained the rock he later used to kill Decedent from the

27   recreational yard during the week prior to the attack, and each Defendant was on duty during that

28   ///

week.  (*Id.* at 7.)  Plaintiff further alleges Defendants all failed to conduct any inspections of Decedent and McCoy's cell during that week.  (*See id.* at 8.)

On November 17, 2017, Decedent and McCoy approached Collins, Gallegos, Heng, Larsen, and Gonzalez, and requested to be separated because they could not spend one more night together.  (*Id.* at 6.)  Furthermore, McCoy specifically told these Defendants that if he spent one more night with Decedent, he was going to kill him.  (*Id.*)  These five Defendants allegedly responded, "Do what you got to do."  (*Id.*)

Decedent was killed around midnight on November 18, 2017, when McCoy bludgeoned him for approximately 30 minutes with a large rock.  (*Id.*)  Plaintiff alleges Larsen and Gonzalez were on duty in Decedent's cell block and in charge of monitoring and supervising the area at that time.  (*Id.*)  Prior to the attack, the television in McCoy's cell was turned on at high volume, which Plaintiff alleges violated correctional policies at MCSP.  (*Id.*)  Plaintiff further alleges Larsen and Gonzalez should have conducted a cell check and required the television volume be turned down at this time per prison policies.  (*Id.*)  The reason such a high television volume was impermissible was because it would interfere with safety checks and responding to assaults and violence amongst cellmates by drowning out officers' ability to hear attacks.  (*Id.*)  Indeed, Plaintiff alleges the high television volume did interfere with Larsen and Gonzalez's ability to hear and respond to the attack.  (*Id.*)  Plaintiff finally alleges Larsen failed to notice Decedent's dead body and his blood splattered throughout his cell during a "cursory cell count check shortly after midnight" and did not notice Decedent's body until 2:30 a.m.  (*Id.* at 7.)

Plaintiff initiated this action on June 6, 2019.  (ECF No. 1.)  The operative Second Amended Complaint ("SAC") proceeds on Plaintiff's claim for the violation of her Fourteenth Amendment due process rights.  (ECF No. 32.)  On September 8, 2020, Defendants filed the instant motion to dismiss and motion to strike.  (ECF No. 36.)  Plaintiff filed an opposition on September 30, 2020.  (ECF No. 39.)  On October 8, 2020, Defendants filed a reply.  (ECF No. 40.)

///

///

3

1    **II.    STANDARD OF LAW**

2         A.    <u>Federal Rule of Civil Procedure 12(b)(6)</u>

3         A motion to dismiss for failure to state a claim upon which relief can be granted under

4    Federal Rule of Civil Procedure ("Rule") 12(b)(6) tests the legal sufficiency of a complaint.

5    *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain

6    "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R.

7    Civ. P. 8(a); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under notice pleading in

8    federal court, the complaint must "give the defendant fair notice of what the . . . claim is and the

9    grounds upon which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal

10   citation and quotations omitted).  "This simplified notice pleading standard relies on liberal

11   discovery rules and summary judgment motions to define disputed facts and issues and to dispose

12   of unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

13        On a motion to dismiss, the factual allegations of the complaint must be accepted as true.

14   *Cruz v. Beto*, 405 U.S. 319, 322 (1972).  A court must give the plaintiff the benefit of every

15   reasonable inference to be drawn from the "well-pleaded" allegations of the complaint.  *Retail*

16   *Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963).  A plaintiff need not allege

17   "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to

18   relief."  *Twombly*, 550 U.S. at 570 (internal citation omitted).

19        Nevertheless, a court "need not assume the truth of legal conclusions cast in the form of

20   factual allegations."  *United States ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir.

21   1986).  While Rule 8(a) does not require detailed factual allegations, "it demands more than an

22   unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A

23   pleading is insufficient if it offers mere "labels and conclusions" or "a formulaic recitation of the

24   elements of a cause of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

25   ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory

26   statements, do not suffice.").  Moreover, it is inappropriate to assume the plaintiff "can prove

27   facts that it has not alleged or that the defendants have violated the . . . laws in ways that have not

28   ///

4

been alleged."  Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters, 459 U.S. 519, 526 (1983).

Ultimately, a court may not dismiss a complaint in which the plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 680.  While the plausibility requirement is not akin to a probability requirement, it demands more than "a sheer possibility that a defendant has acted unlawfully." *Id.* at 678.  This plausibility inquiry is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.  Thus, only where a plaintiff fails to "nudge [his or her] claims . . . across the line from conceivable to plausible[,]" is the complaint properly dismissed.  *Id.* at 680 (internal quotations omitted).

In ruling on a motion to dismiss, a court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201. *See Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988); *Isuzu Motors Ltd. v. Consumers Union of U.S., Inc.*, 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

If a complaint fails to state a plausible claim, "'[a] district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts.'" *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quoting *Doe v. United States*, 58 F.3d 484, 497 (9th Cir. 1995)); *see also Gardner v. Martino*, 563 F.3d 981, 990 (9th Cir. 2009) (finding no abuse of discretion in denying leave to amend when amendment would be futile).  Although a district court should freely give leave to amend when justice so requires under Rule 15(a)(2), "the court's discretion to deny such leave is 'particularly broad' where the plaintiff has previously amended its complaint[.]" *Ecological Rights Found. v. Pac. Gas & Elec. Co.*, 713 F.3d 502, 520 (9th Cir. 2013) (quoting *Miller v. Yokohama Tire Corp.*, 358 F.3d 616, 622 (9th Cir. 2004)).

///

///

5

1

B.      Rule 12(f)

2          Rule 12(f) provides that a court "may strike from a pleading an insufficient defense or any

3   redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  A court will

4   only consider striking a defense or allegation if it fits within one of these five categories.  *Yursik*

5   *v. Inland Crop Dusters Inc.*, No. CV-F-11-01602-LJO-JLT, 2011 WL 5592888, at *3 (E.D. Cal.

6   Nov. 16, 2011) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973–74 (9th Cir.

7   2010)).  "'Immaterial' matter is that which has no essential or important relationship to the claim

8   for relief or the defenses being pleaded."  *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir.

9   1993) (citation and internal quotations omitted), *rev'd on other grounds sub nom. Fogerty v.*

10  *Fantasy, Inc.*, 510 U.S. 517 (1994).  "'Impertinent' matter consists of statements that do not

11  pertain, and are not necessary, to the issues in question."  *Id.* (internal quotations omitted).

12         "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money

13  that must arise from litigating spurious issues by dispensing with those issues prior to trial . . .

14  ."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  However, Rule

15  12(f) motions are "generally regarded with disfavor because of the limited importance of pleading

16  in federal practice, and because they are often used as a delaying tactic."  *Neilson v. Union Bank*

17  *of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152 (C.D. Cal. 2003) (collecting cases).  "Ultimately,

18  whether to grant a motion to strike lies within the sound discretion of the district court."  *Id.*

19  (citing *Fantasy, Inc.*, 984 F.2d at 1528).

20      **III.   ANALYSIS**

21         This action proceeds on Plaintiff's Fourteenth Amendment claim for interference with a

22  parent-child relationship.  (ECF No. 32 at 11–13.) Defendants move to dismiss the claim as

23  asserted against each Defendant under Rule 12(b)(6) and to strike a portion of the claim under

24  Rule 12(f).  (ECF No. 36.)  The Court will address each motion in turn.

25             A.      Motion to Dismiss Under Rule 12(b)(6)

26         A Fourteenth Amendment substantive due process claim for interference with parent-child

27  relationship requires that the parent and child share an "enduring" relationship.  *See Lehr v.*

28  *Robertson*, 463 U.S. 248, 260 (1983) (citing *Caban v. Mohammed*, 441 U.S. 380, 397 (1977)).

1    Further, the alleged violations of a decedent's constitutional rights provide the basis for the

2    substantive due process claim.  *Cooper v. Brown*, No. 1:15-cv-00648-LJO-SAB, 2019 WL

3    4138682, at *6 (E.D. Cal. Aug. 30, 2019) (citations omitted).  Here, Defendants do not dispute

4    Plaintiff's relationship with Decedent is protected under the Fourteenth Amendment but seek

5    dismissal of Plaintiff's claim on the basis that Plaintiff fails to allege the underlying Eighth

6    Amendment violation.  (ECF No. 36 at 9.)

7           Under the Eighth Amendment, "prison officials have a duty . . . to protect prisoners from

8    violence at the hands of other prisoners."  *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (citations

9    and internal quotations omitted).  The failure to protect an inmate may rise to the level of an

10   Eighth Amendment violation when: (1) the deprivation alleged is objectively, sufficiently serious;

11   and (2) the prison official is deliberately indifferent to the inmate's health or safety.  *Id.* at 834.

12   "Deliberate indifference describes a state of mind more blameworthy than negligence" but is

13   fulfilled by something "less than acts or omissions for the very purpose of causing harm or with

14   knowledge that harm will result."  *Id.* at 835.  "Deliberate indifference is a high legal standard."

15   *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

16          This subjective inquiry into deliberate indifference involves two components.  First,

17   Plaintiff must "demonstrate that the risk was obvious or provide other circumstantial or direct

18   evidence that the prison officials were aware of the substantial risk" to Decedent's safety.  *Lemire*

19   *v. Cal. Dep't of Corr. & Rehab.*, 726 F.3d 1062, 1078 (9th Cir. 2013) (citing *Thomas v. Ponder*,

20   611 F.3d 1144, 1150 (9th Cir. 2010)).  A prison official must "be aware of facts from which the

21   inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

22   inference."  *Farmer*, 511 U.S. at 837.  Thus, an official's "failure to alleviate a significant risk

23   that he should have perceived but did not" does not constitute deliberate indifference.  *Id.* at 838;

24   *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1188 (9th Cir. 2002) (finding that even "[i]f a person

25   should have been aware of the risk, but was not, then the person has not violated the Eighth

26   Amendment, no matter how severe the risk.");  *see also LaMarca v. Turner*, 995 F.2d 1526, 1535–

27   36 (11th Cir. 1993) (deliberate indifference requires a prison official possess both knowledge of

28   the danger and the means to cure it).

7

Second, Plaintiff must show there was no reasonable justification for exposing Decedent to the risk. *Lemire*, 726 F.3d at 1078; *Thomas*, 611 F.3d at 1150. Thus, a prison official acts with deliberate indifference when he "consciously disregard[s] a substantial risk of serious harm" to a prisoner's health or safety. *See Farmer*, 511 U.S. at 839–40 (applying the Model Penal Code's criminal recklessness standard to Eighth Amendment deliberate indifference) (internal quotations omitted). "[D]irect causation by affirmative action is not necessary: 'a prison official may be held liable under the Eighth Amendment if he knows that inmates face a substantial risk of serious harm and disregards that risk *by failing to take reasonable measures to abate it.*'" *Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc) (emphasis in original) (quoting *Clem v. Lomeli*, 566 F.3d 1177, 1182 (9th Cir. 2009); *Farmer*, 511 U.S. at 847). Nevertheless, "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 511 U.S. at 844; *see also LaMarca*, 995 F.2d at 1536 (failure in attempting to remedy a danger does not amount to deliberate indifference unless the prison official knows of and disregards an appropriate and sufficient alternative).

Here, Plaintiff alleges Defendants were deliberately indifferent to the serious risk that McCoy would kill Decedent. (ECF No. 32 at 5.) In moving to dismiss the claim, Defendants do not dispute McCoy posed a substantial risk of harm to Decedent (based on threatening to kill him). (ECF No. 36 at 5.) In other words, there was an "objectively, 'sufficiently serious'" deprivation. *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). Instead, Defendants argue Plaintiff fails to establish the two components of the second element of her deliberate indifference claim — that each Defendant had subjective knowledge of the risk of harm to Decedent and disregarded it. (ECF No. 36 at 5.) More specifically, Defendants argue Plaintiff fails to show: (1) each Defendant actually knew Decedent complained of McCoy; (2) each Defendant subjectively drew the inference that, because Decedent complained of McCoy, he was in danger of serious risk; and (3) each Defendant "wantonly chose to be deliberately indifferent to that immediate threat of serious risk." (*Id.* at 7.) Furthermore, Defendants contend the failure to prevent McCoy from having a

8

rock in his cell, and Larsen and Gonzalez's failure to conduct safety checks on November 18, 2017, do not rise to the level of deliberate indifference.  (*Id.* at 5–8.)  The Court will address Defendants' arguments regarding the two components of the deliberate indifference element as to each Defendant.

*i.*     *Subjective Knowledge/Inference of the Risk*

As to the first component of the deliberate indifference element, Plaintiff alleges each Defendant had subjective knowledge of the risk that McCoy was going to kill Decedent since they each knew about McCoy's violent history, received complaints from Decedent about McCoy's threats, and received requests from Decedent for a bed move.  (ECF No. 32 at 4–5.) Plaintiff further alleges McCoy explicitly told Collins, Gallegos, Heng, Larsen, and Gonzalez on November 17, 2017, that he would kill Decedent if they spent one more night housed in the same cell.  (*Id.* at 6.)

a.   McCoy's Violent History

Plaintiff alleges McCoy committed acts of violence outside and inside the prison system. (*Id.* at 4.)  But Plaintiff does not submit facts showing how each Defendant subjectively knew of McCoy's history.  Nor does Plaintiff allege any facts showing an obvious link between McCoy's violent history and a specific danger to Decedent.  *See Washington v. Harper*, 494 U.S. 210, 225 (1990) (acknowledging the prison environment "'by definition,' is made up of persons with 'a demonstrated proclivity for antisocial criminal, and often violent conduct.'" (citations omitted)). As such, this allegation cannot be attributed to any Defendant's subjective knowledge of a specific risk to Decedent.  *Farmer*, 511 U.S. at 837.

b.   McCoy's Threats to Kill Decedent and Request for a
Bed Move

*1)  Complaints Made to All Nine Defendants*

Plaintiff alleges Decedent made complaints to all nine Defendants about the violent threats McCoy made over the several weeks prior to November 18, 2017.  (ECF No. 32 at 5.) However, for the same reasons discussed in the Court's August 4, 2020 Order (*see* ECF No. 31 at 10), Plaintiff has not pleaded sufficient facts to show the risk of housing McCoy with Decedent

9

1   was obvious.  Namely, Plaintiff alleges no facts as to the content of the threats or what

2   information was related to each Defendant.  Lack of such personal knowledge defeats a deliberate

3   indifference claim.  *Farmer*, 511 U.S. at 838; *Gibson*, 290 F.3d at 1188.  As such, Plaintiff's

4   general, unspecified complaints of threats do not establish subjective knowledge as to each

5   Defendant.  Furthermore, Plaintiff concedes that, in response to Decedent's general complaints

6   and request for a bed move, Defendants collectively scheduled a bed move in the week prior to

7   November 11, 2017.  (ECF No. 32 at 5.)  Therefore, even if Decedent's generalized complaints

8   were sufficient to establish subjective knowledge of a threat, Defendants reasonably responded to

9   that risk by granting Decedent's request for a bed move.  *See Farmer*, 511 U.S. at 844–45 (citing

10  *Helling v. McKinney*, 509 U.S. 25, 33 (1993); *Washington*, 494 U.S. at 225).

11                                    *2)   Complaints Made to Collins, Gallegos, Heng,*

12                                          *Larsen, and Gonzalez*

13          Plaintiff additionally alleges Decedent and McCoy directly informed Collins, Gallegos,

14  Heng, Larsen, and Gonzalez of the immediate risk of harm to Decedent on November 17, 2017,

15  the night Decedent was killed.  (ECF No. 32 at 6.)  Specifically, McCoy told the officers that "if

16  he spent one more night with Decedent, he was going to kill Decedent."  (*Id*.)  Defendants argue

17  "these are sweeping conclusory allegations" and there is no real factual basis that Decedent made

18  complaints to the five listed Defendants.  (ECF No. 36 at 6.)  The Court disagrees.

19          Even though the Court found Decedent's generalized complaints of threats were

20  insufficient to establish deliberate indifference, the fact that Defendants scheduled a bed move for

21  Decedent during the week of November 11 suggests they gave at least some credence to

22  Decedent's generalized complaints about McCoy's threats of violence.  On November 17, McCoy

23  expressly told Collins, Gallegos, Heng, Larsen, and Gonzalez he planned to kill Decedent.  (ECF

24  No. 32 at 6.)  Contrary to Defendants' arguments, the latter allegation is sufficiently specific with

25  respect to the content of the threat, the recipients of the information, and the date it was provided.

26  *See Twombly*, 550 U.S. at 570.  Moreover, McCoy's November 17 statement indicates the risk to

27  Decedent had become imminent.  *See Helling*, 509 U.S. at 33 (noting the Eighth Amendment

28  protects against future harms where the alleged dangers are "sufficiently imminent").

1   Accordingly, the Court finds Plaintiff has sufficiently alleged Collins, Gallegos, Heng, Larsen,

2   and Gonzalez had subjective knowledge of the risk of harm to Decedent.

3         In sum, Plaintiff alleges sufficient facts to establish Collins, Gallegos, Heng, Larsen, and

4   Gonzalez had subjective knowledge of the risk to Decedent based on McCoy's November 17,

5   2017 threat, but Plaintiff fails to establish Crozier, Hatch, Salas, and Schopf had subjective

6   knowledge of the risk based solely on Decedent's generalized complaints.  Thus, Plaintiff fails to

7   state a claim against Crozier, Hatch, Salas, and Schopf and Defendants' motion is GRANTED

8   with leave to amend as to these Defendants.  *Lopez*, 203 F.3d at 1130.

9         Because Plaintiff has sufficiently alleged subjective knowledge of the risk as to Collins,

10   Gallegos, Heng, Larsen, and Gonzalez, the Court will evaluate whether the SAC establishes these

11   Defendants consciously disregarded the risk to Decedent.

12             *ii.*        *Conscious Disregard of the Risk*

13         As to the second component of the deliberate indifference element, Plaintiff alleges

14   Collins, Gallegos, Heng, Larsen, and Gonzalez unreasonably exposed Decedent to the risk of

15   being killed by McCoy when, after hearing McCoy's express threat to kill Decedent on

16   November 17, 2017, Defendants responded, "Do what you got to do" and did not take any other

17   action.  (ECF No. 32 at 6.)  Because Defendants could have taken a number of actions in response

18   to the risk to Decedent — including scheduling a more immediate bed move (ECF No. 32 at 5) or

19   conducting adequate cell searches (*id.* at 8) — Plaintiff contends the mere response "Do what you

20   got to do" constitutes a conscious disregard of the risk.[1]  Plaintiff further alleges Larsen and

21   Gonzalez consciously disregarded the imminent risk to Decedent's life when they failed to

22   conduct adequate safety checks and allowed the television in Decedent's cell to play at a high

23   volume, against MCSP policies, during the night of Decedent's murder.  (*Id.* at 6–7.)  Defendants

24   ///

25

26   [1]    Plaintiff additionally contends Defendants were deliberately indifferent by allowing
     McCoy to bring a rock into his cell.  (ECF No. 32 at 7–8.)  However, as Plaintiff fails to allege
27   any facts showing Defendants had subjective knowledge of the existence of the rock — the
     threshold component to the deliberate indifference element — she likewise cannot establish that
28   Defendants consciously disregarded it.

1    generally argue Plaintiff's claims, at most, sound in negligence rather than deliberate indifference.

2    (ECF No. 36 at 8.)  The Court finds Plaintiff has the better argument.

3          As the Court has already determined, Collins, Gallegos, Heng, Larsen, and Gonzalez

4    gained subjective knowledge of an imminent threat to which they should have reasonably

5    responded on November 17, 2017, when McCoy directly threatened to kill Decedent that night.

6    Further, Plaintiff has adequately alleged these Defendants had the capacity to immediately

7    respond to the known threat.  *LaMarca*, 995 F.2d at 1536.  For example, Defendants could have

8    searched the cell for weapons, immediately moved Decedent,[2] or even notified their superiors.

9    (*See* ECF No. 32 at 5–8 (alleging actions Defendants should have taken and citing 15 C.C.R. §

10   3287).)  Instead, the SAC alleges Defendants replied, "Do what you got to do" and took no other

11   actions.  These allegations are sufficient to establish Defendants' failure to take any reasonable

12   measure to abate the known substantial risk of serious harm to Decedent.[3]  *Castro*, 833 F.3d at

13   1067.

14         Thus, Plaintiff has sufficiently alleged a claim for deliberate indifference against Collins,

15   Gallegos, Heng, Larsen, and Gonzalez and Defendants' motion to dismiss as to these Defendants

16   is DENIED.

17         B.      Motion to Strike under Rule 12(f)

18         Defendants move to strike paragraphs 19 through 28 of the SAC and Plaintiff's references

19   to "Defendant J. Austin" ("Austin") on the basis that the Court has already dismissed Plaintiff's

20
     _____

21   [2]    In their reply, Defendants argue for the first time that Plaintiff fails to allege facts showing
     they had authority to make cell move decisions or determine when a cell move would occur.
22   (ECF No. 40 at 4.)  The fact that Defendants could have presented this argument in their moving
     papers but failed to do so is not well-taken.  Nonetheless, Defendants' argument is unavailing.  In
23   light of the allegation that Defendants collectively scheduled Decedent's November 11 bed move
     — a fact which the Court must accept as true at this stage in the pleadings — the Court may
24   reasonably infer that Defendants had the authority to schedule such moves.

25   [3]    Having found Plaintiff adequately establishes the conscious disregard component of the
     deliberate indifference element of her claim as to Collins, Gallegos, Heng, Larsen, and Gonzalez,
26   the Court need not address the additional allegations directed specifically at Larsen and Gonzalez
     for their failure to perform safety checks of Decedent's cell or the improper television volume
27   during the night of the attack, though such allegations tend to bolster Plaintiff's claim against
     these two Defendants.
28

1   claim under the California Public Records Act ("PRA") and therefore all claims asserted against

2   Austin and all references to him are immaterial to the surviving Fourteenth Amendment claim.

3   (ECF No. 31 at 15; ECF No. 36 at 9.)  The Court agrees with Defendants.  The facts listed in

4   paragraphs 19 through 28 of the SAC and the references to Austin pertain only to Plaintiff's

5   previously dismissed claim and do not appear to be essential or important to Plaintiff's surviving

6   claim.  Accordingly, such allegations are immaterial and are properly stricken. *Fantasy, Inc.*, 984

7   F.2d at 1527.  Plaintiff does not argue the allegations are material to her Fourteenth Amendment

8   claim, but rather that Austin's failure to properly comply with the PRA precluded Plaintiff from

9   properly identifying other individuals legally responsible for Decedent's death.  (ECF No. 32 at

10  10.)  This argument is unavailing.  Should Plaintiff seek to add newly discovered Defendants at a

11  later date, she may do so by way of a properly noticed motion to amend.  Moreover, should the

12  Austin/PRA allegations remain unstricken, they would create the risk of prejudice to Defendants,

13  as well as cause delay and confusion of the issues.  Accordingly, Defendants' motion to strike

14  paragraphs 19 through 28 of the SAC is GRANTED without leave to amend.

## IV.   CONCLUSION

16      Based on the foregoing, Defendants' Motion to Dismiss and Motion to Strike (ECF No.

17  36) is GRANTED in part and DENIED in part, as follows:

18      1. Defendants' Motion to Dismiss Plaintiff's claim as asserted against Crozier, Hatch,

19         Salas, and Schopf is GRANTED with leave to amend;

20      2. Defendants' Motion to Dismiss Plaintiff's claim as asserted against Collins, Gallegos,

21         Heng, Larsen, and Gonzalez is DENIED; and

22      3. Defendants' Motion to Strike is GRANTED without leave to amend.

23  Plaintiff may file an amended complaint not later than 30 days from the electronic filing date of

24  this Order.  Defendants' responsive pleading is due not later than 21 days after the date of

25  electronic filing date of an amended complaint or 21 days after the deadline to file an amended

26  complaint, whichever occurs sooner.

27  ///

28  ///

1        IT IS SO ORDERED.

2   DATED:  August 4, 2021

3
4
5
                                                    Troy L. Nunley
6                                                   United States District Judge
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28